UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| LOWER KUSKOKWIM SCHOOL DISTRICT,<br><br>    Plaintiff,<br><br>    vs.<br><br>AMANDA MAXIE; MATTHEW TRICK, in his official capacity as an attorney at ALASKA LEGAL SERVICES CORPORATION OF ALASKA, INC.; and ALASKA LEGAL SERVICES CORPORATION OF ALASKA, INC.<br><br>    Defendants. | 3:18-CV-00212 JWS<br><br>ORDER AND OPINION<br><br>[Re: Docs. 18, 28] |

## I. MOTIONS PRESENTED

At docket 18, Defendants Amanda Maxie ("Maxie"), Matthew Trick ("Trick"), and Alaska Legal Services Corporation of Alaska, Inc. ("ALSC"; collectively "Defendants") filed a motion for summary judgment. At docket 28, Plaintiff Lower Kuskokwim School District ("LKSD") filed its opposition to the motion and a cross motion for summary judgment. Defendants filed their opposition and reply at docket 35. LKSD filed its reply at docket 43. Oral argument was not requested and would not be of assistance to the court.

-1-

## II. BACKGROUND

Defendant Maxie is the parent of a school-aged child, "D.E.," who was a student in LKSD from kindergarten until he was expelled in January 2018 as an eighth grader. His expulsion resulted from an incident on October 31, 2017, when he physically assaulted the school principal and a village public safety officer. He was given a long-term suspension for the incident and notice that the school was recommending expulsion. He was formally expelled on January 16, 2018.

The incident capped what was an increasing record of behavioral issues with D.E. From 2011 through 2017, he received 26 suspensions.[1] Starting in 2017 those suspensions started to increase in severity; he received six multi-day suspensions that year, primarily for anger-related outbursts.[2] Relatedly, his attendance record began to suffer. His attendance during the 2016-2017 school year dropped from perfect attendance the year before to around 86%.[3] His attendance for the first semester of the 2017-2018 school year, before he was expelled, was near 60%.[4] Similarly, his grades also declined in this time period, particularly in the second semester of his seventh grade year. That semester he received three failing semester grades and eight failing quarterly grades, which was an increase over the prior few semesters where he had one or two failing semester grades.[5] He had received several failing grades the quarter before his expulsion.[6]

---

[1] Doc. 18-6; Doc. 18-3.

[2] Doc. 18-6.

[3] Doc. 18-1 at pp. 6-7.

[4] Doc. 18-5 at p. 2.

[5] Doc. 18-1 at p. 5, pp.6-7.

[6] Doc. 18-2 at p. 8; Doc. 18-1 at p. 3.

D.E. was also experiencing family trauma during this time. Several members of his family had committed suicide, and his brother had been molested.[7] D.E. also began to smoke marijuana with some frequency.[8] In May 2017, he received a multi-day suspension due to marijuana use.[9] He began making statements about committing suicide and being "six feet under."[10] In the month preceding D.E.'s confrontation with his principal, teachers sent emails to LKSD staff and administrators informing them of D.E.'s suicidal comments.[11]

Maxie obtained Trick, an attorney at ALSC, to represent D.E. On January 9, 2018, a week before the scheduled expulsion hearing, Trick requested that LKSD evaluate D.E. for special education and related services under the Individuals with Disabilities Education Act ("IDEA") and requested that D.E. be allowed to return to school pending the evaluations.[12] Evaluations were scheduled, but the hearing was not postponed.

On January 10, Maxie filed her first due process hearing request under the IDEA ("DPH I"). The DPH I complaint alleged that LKSD violated its "Child Find" duties under the IDEA by failing to identify D.E. as a student eligible for special education and related services.[13] The complaint alleged that D.E. had a documented history of "profound behavioral issues" that interfered with his education, namely attendance and grades. It asserted that LKSD had been informed by staff members that D.E. had been expressing

---

[7] Doc. 18-2 at p. 7; Doc. 18-4 at p. 1; Doc. 18-11 at p. 4.

[8] Doc. 18-2 at p. 6.

[9] Doc. 18-6 at p. 3.

[10] Doc. 18-2 at p. 12; Doc. 18-5 at pp. 1-2.

[11] Doc. 18-2 at p. 12; Doc. 18-5 at pp. 1-2.

[12] Doc. 18-10.

[13] Doc. 18-5.

thoughts of suicide in school in addition to acting out, but that LKSD did not evaluate D.E. or offer any services to D.E. and instead "criminalize[d] and suspend[ed] him from school indefinitely."[14]

That same day, January 10, 2018, Maxie had D.E. evaluated at the Bethel Family Clinic to support his admission at Raven's Way, an inpatient treatment program for substance abuse in Sitka, Alaska.[15] D.E. was admitted to Raven's Way in January but ended the program early for behavioral reasons and returned home by mid-February 2018.[16]

A few days after filing DPH I and a day before the expulsion hearing, Trick invoked IDEA's "stay put" protection, which allows qualifying students with disabilities to remain in their current educational placement pending disciplinary proceedings.[17] He requested that D.E. be returned to school and provided the procedural protections available for disabled students.[18] LKSD rejected the request and proceeded to expel D.E.

On February 1, 2018, Maxie filed a second due process hearing request ("DPH II").[19] In this second complaint, she argued that LKSD had reason to believe D.E. was a child with a disability before the events that led to the expulsion and therefore D.E. was entitled to all the IDEA protections offered to a child with a disability, including its "stay put" protections that would have allowed D.E. to remain in school pending placement decisions.

---

[14]Doc. 18-5 at p. 2.

[15]Doc. 18-11.

[16]Doc. 18-2 at pp. 16-17; Doc. 18-16.

[17]Doc. 18-24 at p. 1.

[18]Doc. 18-24 at p. 1.

[19]Doc. 18-9.

-4-

LKSD moved to dismiss DPH II. The hearing officer granted the motion, concluding that Maxie did not have a "stay put" claim under the IDEA based on the circumstances of the case and the timing of her IDEA claims in relation to the disciplinary proceedings.[20]

The due process hearing for DPH I was held at the end of February. Maxie, various teachers, and an education consultant and expert testified, as well as LKSD's special education director, school social workers, and superintendents.[21] The hearing officer held the record open for the various psychoeducational evaluations of D.E. that were pending. On July 24, 2018, after receiving the various evaluations, none of which determined that D.E. had a disability entitling him to special education services, the hearing officer issued a 24-page decision denying Maxie's requested relief.[22] He concluded that Maxie did not present evidence to show LKSD had a basis of knowledge to suspect D.E. of having a disability. He then concluded that Maxie's "failure to establish that LKSD had a basis of knowledge that [D.E.] potentially had a disability prior to October 31, 2017, is dispositive of her [Child Find] claim."[23]

LKSD filed this lawsuit seeking attorney's fees and costs associated with defending DPH I and DPH II. The complaint states three claims under 20 U.S.C. § 1415(i)(3)(B)(i):

1) An award under 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III) against Defendants for fees and costs LKSD incurred defending DPH I;

2) An award under 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III) against Defendants for fees and costs LKSD incurred defending DPH II; and

---

[20]Doc. 18-26.

[21]Doc. 18-2 at pp. 1-2.

[22]Doc. 18-2.

[23]Doc. 18-2 at p. 23.

3)  An award under 20 U.S.C. § 1415(i)(3)(B)(i)(II) against ALSC for fees and costs LKSD incurred defending DPH I and DPH II after continued pursuit of the claims clearly became frivolous, unreasonable, or without foundation.[24]

Both parties move for summary judgment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[26] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[28]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[29] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute

---

[24]Doc. 5.

[25]Fed. R. Civ. P. 56(a).

[26]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[27]*Id.*

[28]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[29]*Id.* at 323.

-6-

as to material fact.[30] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[31] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[32] However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[33]

## IV. DISCUSSION

Under the IDEA, attorney's fees and costs are available to a prevailing school district in three circumstances. First, they are available against the attorney of a parent who files a complaint that is "frivolous, unreasonable, or without foundation."[34] Second, they are available against the attorney of a parent who continues to litigate after the litigation "clearly became frivolous, unreasonable, or without foundation."[35] Third, they are available against both a parent and the attorney if the parent's complaint was "presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.[36] These are "rare circumstances"[37] that

---

[30]*Id.* at 323-25.

[31]*Anderson,* 477 U.S. at 248-49.

[32]*Id.* at 255.

[33]*Id.* at 248-49.

[34] 20 U.S.C. § 1415(i)(3)(B)(i)(II).

[35] 20 U.S.C. § 1415(i)(3)(B)(i)(II).

[36] 20 U.S.C. § 1415(i)(3)(B)(i)(III).

[37]*C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1244 (9th Cir. 2015)

"generally involve conduct so offensive to the fair and honorable practice of law that it merits sanctioning of the offending attorneys."[38]

The IDEA's attorney's fees provision allowing a defendant to recover if a claim is frivolous was modeled after the standards for awarding defendants attorney's fees in civil rights cases, as set forth in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission.*[39] The provision allowing defendants to recover on claims brought for an improper purpose comes from Rule of Civil Procedure 11.[40] Consequently, courts rely on *Christiansburg* and Rule 11 cases when considering whether to award attorney's fees under the IDEA.[41] Applying these cases, the Ninth Circuit has held that "[a] case may be deemed frivolous only when the result is obvious or the . . . arguments or error are wholly without merit."[42] A frivolous claim is one brought without a legal or factual basis.[43] A tenuous claim, however, is not equivalent to a frivolous one: "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."[44] The fact that a plaintiff ultimately did not prevail does not in and of itself show it was brought unreasonably or without foundation.[45]

---

[38]*Id.* at 1251 (Reinhardt, J., concurring in part and dissenting in part).

[39]*Capistrano*, 784 F.3d at 1244.

[40]*Id.*

[41]*Id.* at 1245.

[42]*Id.* (quoting *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003)).

[43]*See Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 420 (1978) (noting that the attorney's fee provision for federal civil rights cases was intended to clear the way for suits to be brought but also to protect defendants from burdensome litigation having "no legal or factual basis").

[44]*Id.* at 422; *see also R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1127 (9th Cir. 2011).

[45]*Capistrano*, 784 F.3d at 1245.

Whether a claim has been brought for an improper purpose is intertwined with the frivolousness inquiry.[46] Evidence bearing on frivolousness will often be highly probative of purpose.[47] Moreover, since the standard governing the inquiry is objective, non-frivolous complaints cannot, as a matter of law, be filed for an improper purpose.[48] That is, a non-frivolous complaint will not be penalized "even when the motives for asserting those claims are not entirely pure."[49]

**DPH I**

LKSD argues that Defendants' DPH I complaint, which alleged that LKSD failed to satisfy its "Child Find" obligation under the IDEA, was frivolous because it lacked a factual and legal basis. The court disagrees. The Child Find obligation under 20 U.S.C. § 1412(a)(3) is "an affirmative obligation of every public school system to identify students who might be disabled and evaluate those students to determine whether they are indeed eligible [for services under IDEA]."[50] It extends to children "suspected" of having a disability and in need of special education, "even though they are advancing from grade to grade."[51] Therefore, the allegations and requested relief in Defendants' DPH I complaint turned on the issue of whether LKSD had reason to suspect D.E. had a qualifying disability. Children with a qualifying disability include not only those who have "intellectual disabilities" but also those with a "serious emotional disturbance."[52] The applicable regulations define an emotional disturbance as one "that adversely affects a

---

[46]*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358,1362 (9th Cir. 1990) (discussing what constitutes a frivolous and improper filing under Rule 11).

[47]*Id.*

[48]*Id.*; *see also Prescott*, 631 F.3d at 1126.

[49]*Townsend*, 929 F.2d at 1362.

[50]*N.G. v. Dist. of Columbia*, 556 F. Supp. 2d 11, 16 (D.D.C. 2008).

[51]34 C.F.R. § 300.111(c)(1).

[52]20 U.S.C. § 1401(3)(A).

-9-

child's educational performance" and is exhibited by characteristics "over a long period of time" and "to a marked degree" that include "[i]nappropriate types of behavior or feelings under normal circumstances," and a "general mood of unhappiness or depression."[53]

Despite LKSD's assertion to the contrary, there was at least some factual basis, even if tenuous, to support D.E.'s claim that he suffered from an emotional disturbance that impacted his education. It is undisputed that there was a noticeable increase in aggressive incidents with D.E. and related suspensions starting in 2016, which then resulted in D.E. missing school. The missed school, predictably, was accompanied by a noticeable increase in the number of failing grades D.E. received in 2017 during the second half of seventh grade. During this time frame, it is undisputed that D.E. also began making comments at school about suicide and teachers expressed concern to LKSD administrators about these statements. Evidence of D.E.'s suicidal thoughts coupled with aggressive outbursts could potentially signal depression and inappropriate types of behavior or feelings, and the missed school stemming from these behaviors at least arguably affected his performance, as reflected in D.E.'s handful of failing grades.

Indeed, there is case law supporting Maxie's position. For example, the Eighth Circuit has held that a student who did not have a learning disability was entitled to an educational placement in a residential facility under the IDEA because she suffered from certain psychological problems that contributed to her truancy and the resulting lack of academic credit.[54] A very recent Eighth Circuit case discusses the nature of disabilities stemming from emotional and mental disturbances and acknowledges that students can be eligible for special education if they are absent from school because of

---

[53]34 C.F.R. § 300.8(c)(4)(i).

[54]*Indep. Sch. Dist. No. 284 v. A.C.*, 258 F.3d 769 (8th Cir. 2001).

-10-

compromised mental health.⁵⁵  Moreover, numerous courts have held that suicide attempts or suicidal thoughts accompanied by serious behavioral and academic issues can qualify a student for special education services under the IDEA.⁵⁶  Of course, these cases are very fact specific and distinguishable from D.E.'s situation, but they provide some legal basis for Defendants' position that D.E. may have suffered from a qualifying disability.

While acknowledging D.E.'s behavioral and academic problems, the hearing officer ultimately concluded that those problems did not signal any qualifying disability. The hearing officer's conclusion was made after a full examination and discussion of D.E.'s records and history, taking into account a wide variety of testimony about D.E. and how he compared to other students.  He found, based on the testimony received during the hearing, that there is a high incidence of suicidal ideation among LKSD's student population and such ideation in and of itself does not act as a trigger for a special education referral.⁵⁷  He concluded that D.E.'s anger and behavioral difficulties were not connected to a disability but rather his coinciding substance abuse.⁵⁸  He concluded that D.E.'s failing grades were not indicative of his academic abilities and were only temporary given that they had rebounded some before his expulsion, and he

---

⁵⁵*Indep. Sch. Dist. No. 283 v. E.M.D.H.*, Nos. 19-1269, 19-1336, 2020 WL 2892238, at *5-*6 (8th Cir., June 3, 2020).

⁵⁶*See, e.g., Horne v. Potomac Preparatory P.C.S.*, 209 F. Supp. 3d 146, 158-59 (D.D.C. 2016) (ruling that a child's suicide attempt put the school on notice that the child was potentially suffering from a qualifying disability); *L.J. by and through Hudson v. Pittsburg Unified Sch., Dist.*, 850 F.3d 996, 1006-07 (9th Cir. 2017) (finding that a student who attempted suicide outside of school and was hospitalized for psychiatric treatment qualified for special education services despite his average or above-average academic performance on tests because of how these issues interfered with his education); *Lauren G. ex rel Scott G. v. W. Chester Area Sch. Dist.*, 906 F. Supp. 2d 375, 389-90 (E.D. Pa. 2012) (finding that a student who was hospitalized for suicidal ideation and mental illness qualified for special education services because such issues affected her attendance and led to several failing grades).

⁵⁷Doc. 18-2 at pp. 13, 21.

⁵⁸Doc. 18-2 at pp. 22, 10.

-11-

noted evidence that D.E. was still on track to graduate.[59]  At most, based on the evidence, he felt D.E's behavior signified an antisocial disorder and not a qualifying disability.[60]  The hearing officer's careful analysis of a variety of records, testimony, and evaluations suggests the outcome was not obvious or wholly without merit at the outset.[61]  Moreover, the court cannot engage in post hoc reasoning by crediting the hearing officer's findings and conclusions—that were made with the benefit of a full record and testimony—as determinative of frivolousness.[62]

      LKSD asserts that Maxie's DPH I complaint was based on false allegations, and therefore it was made without an adequate foundation.  LKSD relies on inconsistent representations by Maxie during this time period.  For example, while Maxie alleged in her DPH I complaint that D.E's behaviors interfered with his education, she simultaneously represented to the local medical clinic that D.E. did not have "special needs" and was "good" in school.[63]  LKSD asserts that this inconsistency, along with the fact that Maxie never informed LKSD that she believed D.E. had a disability and generally knew all the underlying facts about D.E., proves her complaint was without basis.

      The court disagrees.  What Maxie meant and understood about students with special needs does not determine whether her complaint was frivolous and without basis under the IDEA.  That she maintained D.E. was capable of learning and had done well in school does not prevent her from trying to obtain special education services based on more recent behavioral problems—including threats of suicide—that affected his attendance and completion of school work.

---

[59]Doc. 18-2 at p. 7.

[60]Doc. 18-2 at p. 22.

[61]*Capistrano*, 784 F.3d at 1245.

[62]*Id.*

[63]Doc. 18-1 at pp. 3, 10.

-12-

LKSD also relies on the hearing officer's conclusion that D.E. "clearly" did not suffer from a qualifying disability, as well as specific findings that the hearing officer made after the benefit of a full evidentiary record. However, as noted above, the court cannot rely on the outcome of underlying proceedings to determine whether a complaint was without merit at the outset. While the officer stated there was "no evidence" that D.E. suffered from a disability, the hearing officer's lengthy opinion does in fact acknowledge D.E.'s behavioral problems and suicidal ideation, and discusses evidence showing some academic decline. These are the facts grounding the DPH I complaint and Maxie's assertion therein that D.E. had a qualifying disability, and, as noted above, there are cases that support such an assertion. Indeed, the hearing officer himself acknowledged one such case but indicated he disagreed with its conclusion.[64] The fact that the hearing officer concluded that D.E.'s behavior and mental health problems "clearly" did not amount to a potential disability under the IDEA may reflect on the weakness of Maxie's claim, but it is not per se indicative of frivolousness. Maxie's claim was not so entirely without merit to be egregious enough to warrant the imposition of fees on her attorney.

LKSD also seeks fees from Maxie herself under 20 U.S.C. § 1415(i)(3)(B)(i)(III), arguing that the complaint was filed for an improper purpose. It argues that her purpose in pursuing the IDEA claim was not because she truly believed D.E. had a disability, but merely to avoid disciplinary proceedings against D.E. and get him back in school. However, as noted above, the court's determination that Maxie's complaint was not frivolous under the IDEA precludes a finding that it was filed for an improper purpose.[65]

**DPH II**

LKSD also argues that DPH II was frivolous and filed for an improper purpose. DPH II was premised on Maxie's claim under 20 U.S.C. § 1415(k)(5) that, because

---

[64]Doc. 18-2 at p. 22.

[65]*Townsend*, 929 F.2d at 1362; *Prescott*, 631 F.3d at 1126.

-13-

LKSD had a basis to suspect that D.E. had a disability, D.E. was entitled to all the IDEA protections offered to a child with a disability, including its "stay put" protections, which would have allowed D.E. to remain in school pending placement decisions.

Section 1415(k)(5) states as follows:

> (A) In general
> A child who has not been determined to be eligible for special education and related services under this subchapter and who has engaged in behavior that violates a code of student conduct, may assert any of the protections provided for in this subchapter if the local educational agency had knowledge (as determined in accordance with this paragraph) that the child was a child with a disability before the behavior that precipitated the disciplinary action occurred.
> (B) Basis of knowledge
> A local educational agency shall be deemed to have knowledge that a child is a child with a disability if, before the behavior that precipitated the disciplinary action occurred–. . . (iii) the teacher of the child, or other personnel of the local educational agency, has expressed specific concerns about a pattern of behavior demonstrated by the child, directly to the director of special education of such agency or to other supervisory personnel of the agency.[66]

These protections are reiterated in the applicable regulation, 34 C.F.R. § 300.534. The regulation further states that if the school district had no basis of knowledge that a child might have a disability prior to taking disciplinary measures against that child, that child may be subject to such disciplinary measures without statutory protections.[67]

DPH II was intertwined with DPH I. Both complaints centered on whether LKSD had a reason to suspect or a "basis of knowledge" that D.E. might have a disability. In DPH II, Maxie argued that D.E. should have been allowed to remain in school during the whole IDEA process and until D.E.'s disability status had been resolved. Maxie argued that 34 C.F.R. § 300.534(d), which allows a child to be subject to disciplinary proceedings without protections, only addresses a situation where the school district does not in fact have a basis of knowledge to suspect the child of having a disability; it does not address the interim situation where it has been alleged but not yet been

---

[66] 20 U.S.C. § 1415(k)(5).

[67] 34 C.F.R. § 300.534(d).

-14-

determined whether the district had a basis of knowledge. The hearing officer dismissed Maxie's argument. He concluded that such an argument "gets the cart before the horse" and that LKSD did not have to treat D.E. as a student with a disability during the expulsion proceedings.[68] He relied in part on a guidance letter from the United States Office of Special Education and Rehabilitation Services, which concluded that a school district may treat a child as one without a disability where the district's basis of knowledge had not yet been decided.[69]

LKSD argues that DPH II was frivolous. Again, it argues that there was no factual basis to believe the district was on notice of a suspected disability, but, for the reasons discussed above, the court disagrees. There were facts, however tenuous, to support such a claim. LKSD also argues that there was no legal basis for the DPH II complaint, as evidenced by the clear language of the regulation and the guidance letter. To the contrary, however, the complaint was not entirely without basis. There are cases where a court has refused to dismiss a claim that alleged a district violated IDEA protections by expelling a student where the claim relied only on allegations that the district had a basis of knowledge.[70] While the agency's guidance letter takes the opposite position, the letter was not binding on the hearing officer.[71] Indeed, the fact that a guidance letter was provided on this issue suggests that there was no well established legal principle in play that would make Maxie's argument egregious enough to support an award of fees.

---

[68]Doc. 18-26 at p. 5.

[69]Doc. 18-26 at pp. 4-5 (citing 49 IDELR 227 (OSEP 9/5/07)).

[70]*S.W. v. Holbrook Public Schs.*, 221 F. Supp. 2d 222, 226-27 (D. Mass. 2002); *see also M.P. v. Governing Bd. of Grossmont Union*, 858 F.Supp. 1044 (S.D. Cal. 1994) (holding that the IDEA's stay put provision automatically applied to an alleged disabled student whether or not he had been previously diagnosed or suspected of having a disability).

[71]Doc. 18-26 p. 5.

#### Litigation tactics

LKSD argues that Defendants' meritless motion practice, delays, and misrepresentations during the IDEA proceedings suggests that they knew their claims were groundless and shows that they frivolously and needlessly continued litigation of their IDEA claims. Under the statute, fee-shifting is only warranted if the "complaint" was frivolous or improper. That is, the inquiry is focused on the filing of the complaint and not on the individual actions taken during the course of IDEA proceedings. Bad lawyering in and of itself is not sanctionable. Of course, actions taken during an administrative proceedings may in fact be probative of whether the underlying complaint was frivolous and filed for an improper purpose: "A litigant who files a frivolous complaint with harassment in mind is, after all, bound to keep harassing" and therefore instances of improper litigation tactics "is a commonsense way to shore up the plausibility" of a school district's arguments.[72] However, the allegations of Defendants' delays and misrepresentations here do not sway the court as to its ultimate inquiry. As discussed in detail above, the filing of the complaint was not completely without merit. The court does not need to rely on instances of misconduct by Defendants during the IDEA proceedings to help make its determination. This simply is not one of those rare circumstances that warrants sanctioning a parent and her attorney with attorney's fees under 20 U.S.C. §1415(i)(3)(B)(i). The fact that Defendants turned down LKSD's settlement counteroffer is also of little persuasive value here. Indeed, the fact that Defendants offered to settle suggests Maxie's claims were not entirely baseless.

---

[72]*I.S. ex rel. Sepiol v. School Town of Munster*, No. 2:11-cv-160, 2012 WL 928880, at *5 (N.D. Ind. Mar. 19, 2012).

## V. CONCLUSION

Based on the proceeding discussion, Defendants' motion at docket 18 is granted and Plaintiff's motion at docket 28 is denied. Plaintiff is not entitled to attorney's fees and costs under 20 U.S.C. §1415(i)(3)(B)(i).

DATED this 18th day of June 2020.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT